Baldwin, J.
delivered the opinion of the Court.
The statute concerning executions, 1 Rev. Code 1819, p. 530, § 16, prescribed in regard to forthcoming bonds, that in the event of the failure to deliver the property according to the condition of the bond, the sheriff should return it to the office from whence the execution issued, to be there safely kept and to have the force of a judgment; and thereupon it should be lawful for the clerk of the Court, where such bond should be lodged, upon motion &c., to award execution &c. And by the amendatory act of 1822, Supp. Rev. Code, p. 270, § 1, the authority of the clerk to award execution upon the bond was transferred from him to the Court. By the true construction of the act of 1819, the forfeited forthcoming bond was to have the force of a judgment, so as to give a lien upon the lands of the obligors, not from the time of the forfeiture, but from the time of the return of the bond to the clerk’s office; from which time last mentioned there was a capacity to sue out execution, and whether the same should be awarded by the clerk or the Court was immaterial. This construction is warranted by the terms of the statute, and is consonant to its spirit. *210 The quasi judgment was, like other judgments, to be . deposited in the clerk’s office, where it could be seen and inspected by all persons interested in the subject; r J r J ' ’ whereas if it took its force as a judgment lien from the ^me ^ie forfeiture, it might be held up to the great prejudice of creditors and purchasers for many years, and that by the act of the plaintiff himself, for by the section of the same statute it was made the duty of the sheriff to deliver the bond to the plaintiff if required, and there was no period of limitation to the award of execution.
In the present case, the execution of Myrick, the testator of the appellants who are first above mentioned, against William D. Epes, upon which the forthcoming bond was taken, issued on the 2d of October 1827, upon a judgment of the Superior court of Nottoway, for 1160 dollars 1 cent, with interest thereon from the 12th of May 1827, and 7 dollars 51 cents costs, and was returnable on the first Monday in December next following. It was levied and the forthcoming bond taken on the 25th of October in the same year; and the bond forfeited on the first Thursday in December 1827, and execution thereupon awarded by the Court on the 28th of April 1828. The forthcoming bond must be regarded as returned on the 28th of April 1828, when the motion for award of execution was made upon it, there being no evidence that it was returned at an earlier day. But prior to the 28th of April 1828, the said William D. Epes, by several deeds of trust conveyed his real estate to secure some of his creditors, which deeds of trust were admitted to record in the county of Nottoway on the 26th of April 1828; one of Avhich deeds however embraces a tract of land situate in the county of Dinwiddie, in Avhich county the same was not recorded. And on the 28th of April 1828, the said William D. Epes, in the Superior court of Nottoway county, confessed various judgments, and *211 being in custody thereupon by the surrender of his special bail on that day in open Court, took the oath of an insolvent debtor, and by his schedule surrendered and transferred to the sheriff all his estate in the property real and personal embraced in the deeds of trust aforesaid.
The said deeds of trust therefore, except in regard to the Dinwiddie land, had priority over the lien of the forthcoming bond, and with the same exception over the assignment of the insolvent for the benefit of his schedule creditors; and the latter must be preferred in regard to the Dinwiddie land over the lien of the forthcoming bond, inasmuch as the judgments confessed in open Court, and the proceeding thereupon and therein had relation to the first moment of the first day of the term; whereas the return of the forthcoming bond must be treated as an act done in the office and not in the Court, and as having no relation at all, and therefore before it was effectual the estate of the insolvent had been assigned by operation of law for the benefit of the schedule creditors.
But although the lien of Myrick by force of his forthcoming bond had thus proved unavailing, as well in regard to the schedule creditors as the incumbrancers, yet that of his original judgment was in equity still subsisting; and being prior in point of time, paramount to both. The forthcoming bond, it is true, after its forfeiture operated Avhile it continued in force as a discharge of the original judgment; but its purpose Avas to secure the payment of the debt, and having proved abortive in that respect from the insolvency of the obligors, the Court of law would have quashed it on the motion of the creditor, in order to remit him in all respects to the benefit of his original judgment. And a Court of equity looking to the substance of things, and disregarding mere matters of form, will not when it has jurisdiction of the subject require the party *212 to go through the formality of quashing the bond at law1, but treat the security as a nullity, and proceed to give such relief as he was entitled to under his original judgment.
Myrick therefore, by force of his original judgment, had at the institution of this suit a lien upon all the lands of his debtor, William D. Epes, at the time of the recovery thereof, to the extent of the debt, interest and costs thereby recovered, and also for the costs and expenses occasioned by the taking of the forthcoming bond, which was part of the execution, and proved unavailing without any fault of the creditor. This lien, by the rules of equity, was to be enforced in the first place as amongst alienees and incumbrancers, against the land last aliened or incumbered by the debtor, and if that should be insufficient, then against the other lands successively in the inverse order in point of time of the alienations and incumbrances.
This suit was instituted by Myrick on the 21st of June 1828, and his bill filed at the August rules next following. Between those two periods the Didwiddie land was sold by the sheriff of that county for the benefit of the schedule creditors. The bill sets forth the judgment, execution, forfeited forthcoming bond and award of execution above mentioned. It also sets forth the several deeds of trust executed by the debtor, the judgments confessed by him, his discharge as an insolvent, and his schedule. It asserts the priority of the plaintiff’s judgment lien, and that it is not affected by the deeds of trust, or the assignment of the debtor on taking the oath of insolvency. It represents that although the plaintiff’s lien upon the Dinwiddie land is prior to that of the schedule creditors, yet he is not disposed to interfere with that land if he can be decreed his money to be raised from the other tracts, as they would produce much more than sufficient for the purpose ; and as to this matter submits it to the Court to decide as equity shall dictate.
*213 The bill further represents that the plaintiff obtained another judgment against William D. Epes in the same Court, on the 30th of April 1828, for 262 dollars 62 cents, with interest thereon from the 14th of February 1828, and 7 dollars 15 cents costs : upon which and the forthcoming bond aforesaid, writs of fieri facias is-J sued, directed to the sheriff of Dinwiddie county, and came to his hands, and thereby created a lien upon the Dinwiddie slaves previously embraced in the schedule aforesaid, at least for any balance remaining, after satisfying the schedule creditors, although said writs were never levied upon said slaves, in consequence of their escape from the county of Dinwiddie to the county of Nottoway.
The bill makes defendants the schedule creditors and those secured by the deeds of trust, amongst which defendants are Archer Jones, Francis Epes, in his own right and as administrator of Thomas R. Epes deceased, and Samuel Scott, administrator of John F. Epes deceased, prays satisfaction of the debts due the plaintiff, a sale of the lands and the Dinwiddie slaves, and that if the latter should be applied to the satisfaction of the schedule creditors, then that the plaintiff’s smaller judgment should participate in the proceeds of the sale which had been made of the Dinwiddie land, on the ground that it had been obtained at the April term 1828, and relating back to the first day of the term, operated as a lien upon that land pro rata with the judgments of the schedule creditors.
Shortly after the commencement of this suit by My-rick, some of the defendants therein, to wit, Francis Epes in his own right and as administrator of Thomas R. Epes deceased, and Samuel Scott, administrator of John F. Epes deceased, brought their suit in the same Court, in which the bill was filed on the 27th of August 1828. The bill charges that the said Francis Epes, Thomas R. Epes, and John F. Epes became *214 bound as sureties for William D. Epes in the bond for 1808 dollars, upon which Cooper, one of the schedule creditors, recovered his judgment; that the judgment to the extent of 1930 dollars 7 cents had been made by-execution out of the property of Francis Epes; and that for the small balance still due Cooper was pursuing Samuel Scott as administrator of John F. Epes. It sets forth the several deeds of trust above mentioned-by which William I>. Epes conveyed his lands and other property to secure some of his creditors, and represents the failure to record any of them in the county of Dinwiddie prior to the debtor’s oath of insolvency, and his assignment for the schedule creditors ; and that by this failure they became void as to the Dinwiddie property, which passed to the sheriff for the benefit of the schedule creditors. It states the sale by the sheriff of Dinwiddie for the benefit of the schedule creditors of the land and some of the other property in that county ; the escape of some of the slaves to the county of Nottoway, and their liability to be sold there, under the schedule assignment, by the sheriff of that county. It seeks the application to the debts due the schedule creditors of the proceeds of the sale which had been made by the sheriff of Dinwiddie, and of the sale which should be made by the sheriff of Nottoway of the Dinwiddie slaves that had escaped from the latter to the former county, and the subrogation of the plaintiffs to the interest of said Cooper as one of the schedule creditors in said proceeds: And it makes the proper defendants, and amongst them the said Myrick ; but it takes no notice of his suit, nor of his paramount lien upon all the lands of the debtor, and does not mention the judgments which he had recovered.
To that bill, Myrick, with other defendants, filed a joint answer, in which they deny the equity to subrogation asserted by the plaintiffs, and allege that the plaintiff Francis Epes had already received more than *215 the amount paid on Cooper’s judgment from sales of part of the property conveyed by the trust deeds, one of which provided for his indemnity as security for the debt to Goo per, and embraced the Dinwiddie property; and that its failure as to that property proceeded from his own laches: Myrick stated separately the recovery of J r J . his two judgments, and reasserted his claim to a lien upon the Dinwiddie slaves by force of his unlevied writs of fieri facias; but took no notice of his own pending suit, nor of his lien therein asserted, whether paramount or pro rata, upon the Dinwiddie land, or the proceeds of the sheriff’s sale thereof.
Pending Myrick’s suit, sales were made by a trustee of the property embraced in the trust deeds, in regard to which they had been duly recorded, and some of it very shortly after the suit was instituted, and before the filing of the bill. In regard to these trust sales, as well those already made as to those contemplated, the bill is silent.
The other suit brought b', Francis Epes &c. was finally heard on the 11th of April 1834, when the Court, by its decree, disposed of the trust sales and the schedule sales according to the supposed rights of the parties, substituting the plaintiffs as sureties to the place of Cooper as one of the schedule creditors, and adjusting the equities arising amongst some of the parties; and the design and effect of the decree was to give distributively as well to the plaintiffs 1 substitution to the interest of Cooper, as *' ,ie other schedule creditors, the whole proeet, the schedule sales made by the sheriffs, including tuat of the Dinwiddie land.
It appears that in the Dinwiddie land and the other lands conveyed by the deeds of trust, the grantor William D. Epes had but a life estate, except the tract of 800 acres in Nottoway conveyed by the deed for the benefit of David G. Williams, in which he had an es *216 tate in fee. That deed was made on the 14th of February 1828, and the others on the 25th of April next ^ a^so aPPeai’s that the proceeds of the trust sales of the lands conveyed for the benefit of Archer ^oues anc^ Francis Epes respectively were paid over to them, and that the proceeds of the sale of the 800 acres x under the deed of the 14th of February were paid over t0 Williams; and that the proceeds so paid to said Jones and Epes were rather more than sufficient to pay off the balance of the larger judgment of Myrick, after deducting from it a sum equal to the proceeds of the Dinwiddie land.
Myrick’s suit was not finally heard until the 14th of October 1845, when the decree appealed from was rendered, by which the Court declining, for reasons stated, to direct a sale of the Dinwiddie land, held that the plaintiff had waived his right to the proceeds of the sheriff’s sale of the Dinwiddie land, and had no right to recover for that amount from the defendants who had received the proceeds of the lands sold for their benefit under the deeds of trust: that the defendants Archer Jones and Francis Epes were liable on account of such proceeds before the defendant Williams could be called upon on account of those received by him : and directed payment by said Jones and Epes respectively to the plaintiff of sums together equal to the balance of his larger judgment, after deducting therefrom the amount of the proceeds of the Dinwiddie land.
And so the question arises, whether the appellants who are the executors of Myrick ought to recover in this suit the amount of the proceeds of the Dinwiddie land, against those defendants who as schedule creditors received the benefit thereof, under the decree of 1834, rendered in the suit brought by Epes and others; and if not, then the further question, whether the executors of Myrick can recover the amount so deducted from his judgment against any of the other defendants.
*217 There is no evidence, nor is there any pretence from any quarter, that the Dinwiddie land did not produce at the sheriff’s sale thereof under the schedule the full value of the life estate of William D. Epes therein; nor does it appear that it was sold subject to Myrick’s paramount judgment lien, or that the purchaser or the , .„ , . , , ’ . , . „ , ,. sheriff had any knowledge of the existence of that hen. It would therefore have been competent for the Court while the proceeds of the sale were in the hands of the sheriff or otherwise within its control, to have directed the same to be applied towards the discharge of Myrick’s judgment. And that relief would have been required by principles of equity, instead of subjecting the purchaser to the loss of the land; and would have fallen within the scope of >the plaintiff’s bill, though not designated therein, the object of it being to obtain satisfaction of his demand out of the lands of the debt- or, and whether by means of sales thereof to be directed by the Court, or of sales already made by competent authority, was immaterial.
It was too late however at the hearing of the present suit in 1845, to subject the proceeds of the sheriff’s sale of the Dinwiddie land, which proceeds were recovered by the schedule creditors by the decree rendered in 1834 in the suit brought by Epes &c. That decree is an insuperable bar to the pretension now made by the executors of Myrick, who was a party in that suit, to a recovery against the schedule creditors of the money paid to them under the authority and by the direction of the said decree of 1834. It was a decree not only upon the same matter, the apparent paramount lien and title of the schedule creditors in regard to the Dinwiddie land, which carried with it the negation of a paramount lien or title in all other persons ; but it was a recovery of the identical subject, the proceeds of the sale of that land made by the sheriff. Nor was it the less decisive and conclusive that the money was not in the hands of *218 Myrick, but in the hands of the sniff who held it subject to the control and decision ofSie Court: nor that Myrick in his answer did not denyrae lien or title asserted in the bill, and asserted no^ted or title in himself, nor that the present suit was raen pending and the first brought, for it is not the institution of a suit, but the judgment or decree therein, which concludes the rights of the parties. The pendency of the present suit, however, serves to shew, if that were material, that Myrick was not ignorant of his own paramount lien upon the Dinwiddie land, but chose not to insist upon it, preferring and desiring, as would seem from his own bill, to obtain satisfaction of his larger judgment out of his debtor’s other lands.
It follows from what has been said, that the Circuit court did not err in failing to decree in the present suit to the plaintiffs therein, payment by the schedule creditors of the proceeds of the sale of the Dinwiddie land which they had recovered by the former decree of 1884, rendered in the suit brought by Epes &c.
Nor did the Circuit court err in refusing to decree against the creditors who had received the proceeds of the sales made under the deeds of trust, so much of the plaintiff’s demand as was equal to the proceeds of the sheriff’s sale of the Dinwiddie laud.
Although Myrick had a paramount judgment lien upon all the lands of his debtor, yet his proper resort was primary as to the Dinwiddie land, secondary as to the Nottoway lands conveyed for the security of Jones & Epes, and ultimate as to the Nottoway land conveyed for the security of Williams; and of these funds he could not subject the second until he had exhausted the first, nor the third until he had exhausted the second. And if by his surrender, waiver, acquiescence or neglect, he lost the power of proceeding in this order, he thereby incurred the consequences himself, and could not throw the burthen upon others by whom it *219 ought not to have been borne. The facts already stated serve to shew that, with a full knowledge of the priority of his lien, he suffered the proceeds of the Dimviddie land to remain in the hands of the sheriff for nearly four years without an effort to secure the application thereof to his judgment, and by his wilful waiver or gross neglect, submitted to the conflicting pretension of the schedule creditors, and so allowed the fund to be appropriated to their benefit, by an unreversed and irreversible decree in their behalf. And if notwithstanding this, he might still have pursued the perishable life estate in the hands of the purchaser at the sheriff’s sale, he has not made out a case proper for such relief by evidence, nor by pleading, his bill not having even mentioned the name of the purchaser, who did not stand in the position of a purchaser pendente lite, the sale having been made before process served and bill filed.
The Court is therefore of opinion, that there is no error in the decree of the Circuit court.
Decree affirmed.